IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL EVENT SERVICES, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. |
| | ) |
| FYRE FESTIVAL, LLC, FYRE MEDIA, | ) |
| INC., JEFFREY ATKINS, and | ) |
| WILLIAM "BILLY" MCFARLAND, | )   JURY DEMAND |
| | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff National Event Services, Inc. ("NES" or "Plaintiff") submits this Complaint against Defendants, Fyre Festival, LLC, Fyre Media, Inc., Jeffrey Atkins (p/k/a "Ja Rule"), and William "Billy" McFarland (collectively, "Defendants") and states the following:

### PARTIES

1. National Event Services, Inc. is a Pennsylvania corporation with its principal place of business at 501 Bailey Road, Yeadon, Pennsylvania.

2. Defendant Jeffrey Atkins, upon information and belief, is an adult individual who resides at 10 Lookout Drive, Saddle River, New Jersey 07458.

3. Defendant Atkins (p/k/a "Ja Rule") is an entertainer, touring and recording artist who co-founded, organized and operated the anticipated 2017 Fyre Festival (the "2017 Festival").

4. Defendant William "Billy" McFarland, upon information and belief, is an adult individual who resides in the State of New Jersey.

10434049-1

5.  Defendant McFarland, in conjunction with Defendant Atkins, co-founded, organized and operated the anticipated 2017 Festival and serves as the CEO of Defendant Frye Media, Inc.

6.  Defendant Fyre Festival, LLC is a Delaware Limited Liability Company with its principal place of business is 52 Lispenard Street, TH 1, New York, New York 10013.

7.  Defendant Fyre Festival, LLC maintains The Corporation Trust, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its registered agent for service of process.

8.  Defendant Fyre Media, Inc. is a Delaware Corporation with its principal place of business at 111 Eighth Avenue, 13th Floor, New York, New York 10011.

9.  Defendant Fyre Media, Inc. maintains The Corporation Trust, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent for service of process.

10. NES is a party to a March 24, 2017 Agreement with Fyre Festival, LLC for, *inter alia*, provision of emergency medical services during the anticipated 2017 Festival founded, organized and operated by Defendants Atkins and McFarland (the "Agreement").

## JURISDICTION & VENUE

11. Personal jurisdiction over Defendants is proper pursuant to the Pennsylvania long arm statute, 42 Pa.C.S.A. § 5322, in that: (a) Defendant Fyre Festival, LLC entered into the Agreement with NES, a Pennsylvania-based Company, for the provision of emergency medical services essential for Defendants to meet the needs of its anticipated 2017 Festival; (b) Defendants communicated with Plaintiff's representatives in Pennsylvania throughout the negotiation and initial attempted performance under the Agreement; and (c) Defendants'

tortious conduct and material breaches of the Agreement have caused and continue to cause harm to Plaintiff in this Judicial District.

12. This Court has subject-matter jurisdiction over this matter because it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and because there is diversity of citizenship between NES, a Pennsylvania Corporation, with its principal place of business in Yeadon, Pennsylvania, and Defendants Atkins and McFarland, both individuals who reside in New Jersey, Fyre Festival, LLC, a Delaware Limited Liability Company with no members, upon information and belief, who reside, are incorporated and/or maintain principal places of business in Pennsylvania, and Fyre Media, Inc., a Delaware Corporation with its principal place of business in New York, New York.

13. Venue properly lies in this Judicial District because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Pennsylvania.

## FACTS

14. NES is Pennsylvania-based company with significant experience in providing emergency medical services at various music festivals both in the United States and abroad.

15. In January of 2017, representatives of Defendants first approached NES regarding NES's provision of emergency medical services during the anticipated 2017 Fyre Festival, with pre-event obligations starting on Wednesday, April 26, 2017 and the 2017 Festival ending on May 8, 2017.

16. In February of 2017, Plaintiff participated in an initial site visit with, among others, the Security Director for the Festival, Michael Bogosian and representatives of Live Nation, both of whom were attached to the Festival at that time.

17. Neither Mr. Bogosian nor Live Nation remained involved with the actual 2017 Festival.

18. During the negotiations of the eventual Agreement, Defendants provided repeated assurances that, as organizers and promoters for the 2017 Festival, they had taken all necessary actions to ensure the successful staging of a first-class music festival with appropriate (a) funding, (b) accommodations, (c) permitting; and (d) infrastructure necessary to ensure the safety and wellbeing of both the Festival attendees and third-party vendors hired to provide services at the Festival.

19. NES relied upon Defendants' representations in entering into the Agreement to provide emergency medical services during the 2017 Festival, a copy of which is attached to this Complaint as **Exhibit A**.

20. In actuality, Defendants Atkins and McFarland utilized Defendants Fyre Festival, LLC and Fyre Media, Inc. in furtherance of their fraudulent conduct in which they, among other misrepresentations, falsely marketed and advertised the 2017 Festival, including vis-à-vis an intentionally deceptive social media campaign, in a manner designed to mislead concert-goers and third-party vendors regarding the sufficiency of critical components of the 2017 Festival, including, but not limited to:

    (a) a VIP experience in a luxurious private-island setting;

    (b) quality accommodations; and

    (c) A-list musical talent, such as Major Lazer and Migos.

21. In reality, Defendants McFarland and Atkins knew, at the time they negotiated the Agreement, that they (a) had grossly undercapitalized the 2017 Festival and Fyre Festival, LLC from inception; (b) could not pay the third-party vendors hired to work the 2017 Festival;

10434049-1

(c) could not pay the musical acts scheduled to appear; and (d) had neither secured a private island nor completed any of the work necessary to ensure adequate infrastructure for the heavily marketed singularly unique VIP-island festival experience.

22. Further compounding the harm to Plaintiff, Defendants failed and/or refused to obtain cancellation insurance for the 2017 Festival at any point prior to Wednesday, April 26, 2017, despite their actual knowledge at that time that the 2017 Festival would likely never go forward and as Defendants continued to advertise and market the 2017 Festival, selling tickets and committing third-party vendors.

23. Upon information and belief, Defendants only notified certain expected attendees of the actual problems affecting their ability to hold the 2017 Festival and failed to notify NES of any potential problems at any point prior to Plaintiff's arrival on-site, located on the island of Great Exuma Island, Bahamas (the "Island").

24. When NES arrived on the Island, on or around April 26, 2017, it immediately discovered that the accommodations were uninhabitable, including bug infestation, blood-stained mattresses and no air conditioning.

25. When NES conducted a site visit upon arrival, it determined that Defendants had failed to provide any of the facilities necessary for NES to provide medical services during the 2017 Festival.

26. Defendants' failure to perform the most basic and essential of their contractual obligations and/or representations rendered NES's further performance under the Agreement impossible.

27. NES also repeatedly requested confirmation that the 2017 Festival staff was properly permitted to perform medical services on site, and Plaintiff was never provided with

10434049-1

any such documentation in violation of their obligations under Exhibit B (subsection (B)) of the Agreement.

28. Despite Defendants' repudiation of their obligations under the Agreement, NES returned to the festival site and determined it would be necessary to open the main medical tent overnight in response to obvious safety and health concerns for the people trapped on the Island, which left NES exposed to serving distressed patrons for an unprepared festival site.

29. At 12:25 a.m. on April 28, 2017, NES discovered that not only had Defendants failed to secure a contract with a medical evacuation helicopter or plane, but that the medical clinic on the Island was also closed.

30. As a result, NES had nowhere to send any patient who may have required emergency care overnight.

31. At 8:00 a.m. on April 28, 2017, NES was informed that Defendants had cancelled the 2017 Festival.

## CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST ALL DEFENDANTS)

32. The preceding allegations are restated and incorporated by reference.

33. NES and Defendant Fyre Festival, LLC mutually assented to the terms of the Agreement.

34. The Agreement is based upon sufficient consideration.

35. Defendants' material breaches of the Agreement, including the cancelation of the 2017 Festival due to Defendants' gross incompetence, negligence and/or fraudulent

10434049-1

conduct, rendered Plaintiff's performance under the Agreement impossible and vitiated the very purpose and essence of the Agreement.

36. As a result of Defendants' breaches of the Agreement, Plaintiff has suffered compensatory and consequential damages, including lost opportunity costs and/or lost profits, in an amount to be proven at trial.

37. Because Defendants Atkins and McFarland grossly undercapitalized both the 2017 Festival and Defendant Fyre Festival, LLC from inception and utilized the protections afforded Defendants Fyre Festival, LLC and/or Fyre Media, Inc. under the laws of the State of Delaware to perpetrate a fraud on both attendees and vendors, NES is entitled to pierce the corporate protections afforded Defendants Fyre Festival, LLC and Fyre Media, Inc. and hold Defendants Atkins and McFarland individually and personally liable for Plaintiff's contractual damages.

## COUNT II

### UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

38. The preceding allegations are restated and incorporated by reference.

39. Despite Defendant Fyre Festival LLC's repudiation of its contractual obligations set forth in the Agreement, Plaintiff conferred a benefit on Defendants in its performance of extra-contractual emergency medical services on site in order to protect attendees and others stranded on the Island.

40. Defendants appreciated the benefits of NES's extra-contractual provision of services, which would not otherwise been available but for NES's actions.

41. Defendants accepted the benefits of critical overnight emergency care for its distressed patrons and vendors trapped on the Island conferred upon them, and it would be

unconscionable for them to retain those benefits without paying the reasonable value of NES's services.

## COUNT III

### FRAUD IN THE INDUCEMENT
### (AGAINST ALL DEFENDANTS)

42. The preceding allegations are restated and incorporated by reference.

43. Defendants falsely misrepresented critical facts to Plaintiff NES regarding the almost every material aspect of the 2017 Festival, including, without limitation:

(a) Capitalization necessary to produce the anticipated Festival, which began to unravel in early April as many artists and vendors remained unpaid in the weeks leading up to 2017 Fyre Festival;

(b) Performances by A-list musical acts, which Defendants could not afford to pay, as reflected by the cancellation of Blink 182 in the days leading to the ultimate cancellation of the entire Festival;

(c) VIP beach front music festival experience with appropriate safety and accommodations for attendees and third-party vendors; and

(d) Deceptive marketing and advertising leading up to the Festival that had no relationship to the chaos and disarray of the actual festival site.

44. Defendants knew the representations were false at the time they made these representations to NES.

45. Defendants had not completed virtually any of the required details necessary for the logistical, financial and humanitarian resources necessary to produce the 2017 Festival.

46. Defendants made the representations with an intent to induce Plaintiff to enter into the Agreement.

47. NES was under no legal duty to enter into the Agreement.

48. NES forewent other business opportunities and lost revenue in addition to the damages incurred under its Agreement in reasonable reliance on Defendants' intentional misrepresentations.

49. NES has suffered damages in excess of Two Hundred, Fifty Thousand ($250,000) as a result of Defendants' fraudulent misrepresentations.

50. NES also seeks punitive damages against Defendants with respect to their malicious, wanton, willful and oppressive conduct that demonstrated a reckless indifference to the rights of NES to its legal detriment.

51. Alternatively, NES seeks the equitable remedy of rescission of the March 24, 2017 Agreement as a result of Defendants' intentional and material misrepresentations.

## COUNT IV

### FRAUDULENT MISREPRESENTATION
### (AGAINST DEFENDANTS ATKINS, MCFARLAND and FYRE MEDIA, INC.)

52. The preceding allegations are restated and incorporated by reference.

53. From inception of the Agreement, Defendants Atkins, McFarland and Fyre Media, Inc. embarked on a campaign of incompetence, fraud and deceit in the provision of information not only to Plaintiff, but also to virtually any third-party vendor associated with the 2017 Festival as well as the people who had purchased tickets.

54. NES reasonably relied upon those Defendants' fraudulent misrepresentations to its legal detriment in entering into the Agreement and in attempting to perform under the Agreement to provide emergency medical services at the 2017 Festival.

55. NES has suffered damages as a result of Defendants' fraudulent misrepresentations.

56. Because Defendants' fraudulent misrepresentations were malicious, wanton, willful, oppressive and exhibited a reckless indifference to the rights of NES, NES is also entitled to punitive damages.

## COUNT V

### NEGLIGENT MISREPRESENTATION
### (AGAINST ALL DEFENDANTS)

57. The preceding allegations are restated and incorporated by reference.

58. Defendants supplied NES with false information relating to the funding, organization, infrastructure and accommodations, among other false information, critical to NES's consent to enter into the Agreement and attempted performance during the Agreement.

59. Defendants failed to exercise reasonable care or competence in communicating the information to NES.

60. NES reasonably relied upon the false information provided by Defendants to its legal detriment.

61. NES has suffered damages as a result of Defendants' negligent misrepresentations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff National Event Services, Inc. prays that the Court enter judgment as follows:

    A.    Awarding compensatory and consequential damages resulting from Defendant Fyre Festival, LLC's material breaches of the March 24, 2017 Agreement;

    B.    Piercing the protections afforded Defendants Fyre Festival, LLC and Fyre Media, Inc. under the laws of the state of Delaware as a result of Defendants Atkins and McFarland's use of these entities in furtherance of their fraudulent misconduct in the formation, planning, advertising/marketing and attempted operation of the 2017 Fyre Festival and holding Defendants Atkiins and McFarland individually and personally liable;

C. Awarding the reasonable value of NES's emergency medical services

D. Awarding compensatory, consequential and punitive damages resulting from Defendants' intentional and malicious fraud in the inducement;

E. Alternatively, ordering the rescission of the Agreement as a result of Defendants' fraud in the inducement;

F. Awarding compensatory, consequential and punitive damages for Defendants Atkins, McFarland and Fyre Media, Inc.'s intentional and malicious fraudulent misrepresentations;

G. Awarding compensatory and consequential damages for Defendants' negligent misrepresentations;

H. Awarding pre-judgment interest on all of NES's damages at the highest rate allowed by applicable law;

I. Awarding post-judgment interest on all sums awarded at the highest rate allowed by applicable law; and

J. Awarding any other relief that the Court deems just and equitable.

Dated: 5-3-17

Rawle & Henderson LLP

Catherine N. Walto, Esquire (PA Attorney ID 62343)
Jesse M. Endler, Esquire (PA Attorney ID 200622)
The Widener Building
1339 Chestnut Street, 16th Floor
Philadelphia, PA 19107
(215)-575-4200

and

Chris Vlahos, Esquire (BPR #20318) (*pro hac vice* admission being sought)
Ritholz Levy Sanders Chidekel & Fields LLP
1221 6th Avenue North
Nashville, TN 37208
(615) 250-3939

*Attorneys for Plaintiff, National Event Services, Inc.*

10434049-1

# EXHIBIT "A"

10434049-1



**N-ES** | NATIONAL EVENT SERVICES, INC.

## AGREEMENT
## PROVISION OF EVENT MEDICAL SERVICES
## TO
## FYRE FESTIVAL, LLC

This Agreement is between Fyre Festival, LLC, herein referred to as Client, of the one part,

and

National Event Services, Inc. (NES) herein referred to as Provider, of the second part.

This Agreement is effective on this 24th day of March, 2017.

### WITNESSETH

WHEREAS, the client requires emergency medical services to meet the needs of its members and patrons; and

WHEREAS, the Provider wishes to make available its services to the Client; and

WHEREAS, the Client setting forth certain conditions and standards as noted below, agrees to enter into an exclusive relationship with the Provider to service the Fyre Festival event, located on Great Exuma Island Bahamas for Medical Services as specified in Section II. Standards of Operation; and

WHEREAS, the Provider understands the condition of the relationship and agrees to strictly adhere to the obligations and requirements as set forth.

NOW, THEREFORE, in consideration of the terms and conditions herein contained, the parties hereto intending to be legally bound, do hereby agree as follows:

### I. SERVICES

Provider agrees to provide staff for the following:

       **EVENT DATES:**  **Pre Event -** Travel day, Wednesday, April 26th
                           **Set Up –** Thursday, April 27th
                           **Show Days -** April 28th, 29th, 30th, May 1st (until 12 noon)
                                   and May 5th, 6th, 7th, 8th (until 12 noon) 2017
                           **Post Event -** Travel day, Monday, May 8th

**No coverage May 2nd, 3rd, or 4th**
(see Spreadsheet titled Fyre Deployment V6 for exact coverage provided)

**EXHIBIT A**

## II. EQUIPMENT PROVIDED

(see spreadsheet titled "supply meds lit for Fyre" for a complete list)

## III. STANDARDS OF OPERATION

**A. Staff and Personnel:** Provider will provide the following personnel who have, as listed, these minimum credentials and/or certifications with regard to medical training:
1. **(1) EMS Director**
2. **(1) Admin/Ops**
3. **(2) Doctors (for 24 hour coverage)**
4. **(20)** Medical Staff (including United State or Nationally Registered Emergency Medical Technicians or EMT Paramedics)

Provider will ensure all personnel will be neatly groomed and will be neatly dressed in a recognizable uniform and will perform their duties and responsibilities in a professional, courteous and caring manner.

**B. Operational Safety:** Provider will ensure that all personnel operate all equipment and provide care in a manner wherein they perform their duties and responsibilities within reasonable standards for safety and they will furthermore perform all duties in a professional, courteous and caring manner.

**C. Operational Plan:** Provider and Client have developed an operational plan to address how Event Medical personnel will be deployed at the Event. Plan includes stand-by locations for all personnel and protocols for response.

## IV. SERVICES NOT PROVIDED BY THE PROVIDER

A. The Provider acknowledges that the Client will employ its own personnel or contract a provider to provide concession services at the Event and that Client intends to serve alcoholic beverages. Client acknowledges that compliance with all legal regulations regarding the sale and distribution of alcoholic beverages, including the evaluation of intoxication of attendees attempting to purchase alcoholic beverages at the Event, is the sole responsibility of the Client and/or its contracted concessionaire. Provider accepts no liability as to the operations and/or sales of alcoholic beverages at the Event.
B. The Provider acknowledges that the Client may employ its own personnel or contract a provider to use **Aerial Drones** (unmanned flying machines) at the Event. Client acknowledges that they are doing so **against the explicit recommendations of Provider**. Client acknowledges that compliance with all legal regulations regarding the use of Aerial Drones at the Event, and ALL liability associated with the use of Aerial Drones at the Event is the sole responsibility of the Client and/or its contracted concessionaire. Provider accepts no liability as to the operations of Aerial Drones at the Event.

## V. NON-DISCRIMINATION

Provider agrees not to differentiate or discriminate in the delivery of services to individuals because of race, color, national origin, ancestry, religion, sex, marital status, sexual preference, age, financial ability, or medical condition; and agrees to render treatment and care to all persons in the same manner and in accord with the same standards as offered to other persons.

## VI. INSURANCE

A. Provider will be responsible to maintain insurance coverage throughout the course of this Agreement. Provider will be responsible to file with Client a Certificate(s) of Insurance.
B. Client will be responsible to maintain insurance coverage throughout the course of this Agreement. Client will be responsible to file with Provider a Certificate(s) of Insurance.

## VII. COMPENSATION

Client will pay Provider for services according to the fee schedule specified in **Exhibit "A"**. Provider will be responsible for the invoicing and collection of its fees and will pursue such reimbursement through all appropriate sources for direct payment from the Client.

## VIII. TERMINATION

Notwithstanding anything to the contrary, the parties, by mutual agreement may terminate this Agreement at any time.

Client's failure to perform and or provide any of the items by the deadlines listed in **Exhibit "B"** are grounds for the Provider to terminate this contract and retain any and all deposits and or payments made from the Client to the Provider.

## IX. HEADINGS

The headings used to identify a paragraph have been included only for convenience of the parties and are not intended to constrain or completely identify the contents of said paragraph.

## X. GOVERNING LAW

The validity, enforceability, and interpretation of any on the clauses of this Agreement shall be governed by the laws of the Commonwealth of Pennsylvania.

## XI. ENTIRE AGREEMENT

This Agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

## XII. MODIFICATION OR WAIVER

A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement.

The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

## XIII. SEVERABILITY

If any term, condition, clause or provision of this Agreement shall be determined or declared to be void in law, or otherwise, then only that term, condition, clause or provision shall be stricken from this Agreement and in all other respects, this Agreement shall continue in force, effect and operation.

## XIV. NOTICE

Any notice required to be given pursuant to the terms and conditions hereof, shall be in writing and shall be sent by Certified or Registered Mail, addressed as follows:

Fyre Festival, LLC
52 Lispenard Street, TH 1
New York, NY 10013
Attn: Yaron Lavi

National Event Services, Inc.
501 Baily Road
Yeadon, PA 19050
Attn.: Jonathan Keogh

## XV. INDEPENDENT CONTRACTOR RELATIONSHIP

It is mutually understood and agreed that in the performance in the duties and obligations of the parties of this Agreement, each party hereto is a separate and independent contractor. Neither party is the principal, agent or representative of the other; nor will any employee of the Provider or Client be considered employees of the other party.

## XVI. ATTACHMENTS

All Exhibits hereto, namely Exhibit "A" and Exhibit "B" are incorporated by reference herein and shall be considered to be an integral part of this Agreement.

IN WITNESS HEREOF, the parties have set their hands and seals the day and year first above written.

National Event Services, INC.

_____
Jonathan Keogh, Vice-President
Date___3/24/2017___


Fyre Festival, LLC

_____

Date___03 / 27 / 2017___
William McFarland, CEO

# EXHIBIT "A"
# RATES, BILLING AND PAYMENT

The Provider will invoice the Client the amount of Thirty Six Thousand Nine Hundred Dollars ($160,000.00) for the "Fyre Festival" Event. A 50% non-refundable deposit is due at signing of this document and the balance plus any related expenses is due no later than April 14th. Any additions to the scope of staffing or equipment outlined in this agreement will be added to the April 14th invoice.

## I. Payment Responsibility

Provider will directly submit an invoice to Client for total fee specified above which includes the following direct expenses:
Wages/Benefits
Equipment/Supplies (if applicable)
Total hours of coverage

## II. DESCRIPTION OF SERVICE IN KIND

Provider shall not bill Client for Staff time on site visits. Travel expenses from any site visits will be added to the final invoice.

Client agrees to allow Provider to use in its marketing materials the fact that it provides such services to Client.

# EXHIBIT "B"
## PROVIDED BY CLIENT

Client will provide **ALL** of the following, prior to April 14th

A. **Insurance Certificate:** Company and/or Event COI's at no less than $10,000,000.00 per occurrence.
B. **Permitting:** ALL work permits and certifications need to perform EMS work on Great Exuma Island.
C. **Festival Command structure:** Provider requires a breakdown of the command structure of this event with names and contact information.
D. **Festival Department Heads:** Provider requires a list of department heads with contact information. Production, Security, Catering, Trash, etc.
E. **Shipping** – Client will be responsible for the costs of shipping equipment, supplies, medications to and from our offices in Yeadon, PA. Client will be responsible for the costs of any equipment not shipped back to Yeadon, PA.
F. **Accurate attendance counts:** Provider requires the accurate, total of people at the event each week, including everyone, workers, tickets sold or given away, day passes, **EVERYONE**. Provider requires also need a breakdown of how many will be camping on site and the breakdowns and locations of off site patrons are staying.
G. **Security Plan:** Provider requires a formal Security plan including Security posts and numbers and type of staff. Armed? Unarmed?
H. **Travel:**
  - **Flights** - Provider requires that all travel be booked and paid for by the client, with the exception of the EMS Director and Admin/Ops who will book their own flights and the cost to the final balance invoice. EMS Director and Admin/ops will fly exclusively on American Airlines.
  - **Ground Transportation** - Provider requires that the Client pay for all Ground transportation to and from the airport, resort, and event.
I. **Lodging:** Provider requires the following lodging at either **Grand Isle or Sandles resort** (houses are **NOT** acceptable) for the following dates: April 26th through the morning of May 8th. EMS Director – Single Room, Admin/Ops – Single Room, 11 double rooms for 2 doctors and 20 staff. Each staff member gets his or her own bed. No sharing.
J. **Meals** - Client will provide or reimburse for all meals for EMS staff from April 26th through the morning of May 8$^{th.}$
K. **Lifeguards:** Client is sourcing and retaining their own Lifeguards. Provider staff will <u>NOT</u> make water rescues.
L. **Additional Staffing Coverage:** Provider's proposal is for the main event site, Coco Beach, Marina, and Ambulance Staffing only and does not include any other off site locations.
M. **Latest Production and Performance schedules.**